NOT DESIGNATED FOR PUBLICATION

No. 126,555

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN SCHUTT, as Agent for the Owner J.E. Schutt & M.A. Schutt Family Trust,
*Appellee*,

v.

SHERRI FOSTER,
*Appellant*,

v.

JOHN SCHUTT and STUDIO 605-RENEW, LLC,
*Third-party Defendants.*

MEMORANDUM OPINION

Appeal from Johnson District Court; JOHN B. MCENTEE, magistrate judge. Oral argument held July 9, 2024. Opinion filed July 26, 2024. Reversed in part and remanded with directions.

*Eric G. Kraft*, of Eric Kraft Law, P.A., of Olathe, for appellant.

*Jadh J. Kerr*, of Speer & Holliday, LLP, of Olathe, for appellee/third-party defendant.

Before ARNOLD-BURGER, C.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: In this landlord-tenant dispute, Sherri Foster appeals from the district court's order finding she owed $21,240 in late fees for unpaid rent. Foster essentially contends the district court erred in awarding her landlord, John Schutt, late fees during the pendency of the litigation for 1,062 days at $20 per day as unconscionable and unreasonable. After review, we find the district court erred in awarding late fees beyond the time in which Foster had possession of the property. We reverse in part and

1

remand with directions to vacate that portion of the judgment relating to late fees over $2,460 because we find that amount was owed by Foster when she vacated the premises.

FACTUAL AND PROCEDURAL BACKGROUND

Schutt and Foster entered into a residential lease agreement as landlord and tenant, respectively, for a property located in Prairie Village. The lease commenced November 1, 2018, and extended through July 31, 2019, with an option to extend the lease term by six months. Per the lease agreement, Foster agreed to pay a $1,900 security deposit; $1,900 per month, due on the first of the month; and a late charge of $20 per day for any unpaid rent after the due date. The lease agreement appears to have been orally extended by the parties and became a month-to-month lease. Toward the end of her tenancy, Foster also agreed to perform construction services for Schutt.

Foster failed to timely pay her rent for July, August, and September 2020. In August 2020, Schutt sent Foster a notice to either quit and surrender possession of the premises or pay past due rent for July and August 2020 plus late fees within three days. The notice reflected Foster owed past due rent in the amount of $1,950 per month and late charges. However, we have not been able to find any lease agreement in the record for $1,950 per month. The notice also included a demand for $750 in late charges for July rent; and $150 in late charges for August rent.

In September 2020, Schutt filed a forcible detainer petition for rent and possession of the property, claiming Foster owed three months' rent—$5,850—and 70 days of late fees—$1,750. Schutt asked the district court for a judgment against Foster for $7,600 in unpaid rent and late fees, ongoing rent and fees that may accrue during the pendency of the action, up to $10,000 in damages to the premises, other costs of the action, and restitution. Schutt amended his petition to claim up to $30,000 in damages to the premises.

2

Foster answered Schutt's petition asserting affirmative defenses and counterclaims of quantum meruit, trespass, invasion of privacy based on intrusion upon seclusion, and requested punitive damages. The district court's October 2, 2020 order reflected Foster agreed to vacated the premises on or about October 31, 2020, and it would resolve the damage-related issues at a later date.

Trial did not occur until March 2023 because of the damage and counterclaim issues. A trial transcript is not in the record on appeal. In its written journal entry of judgment filed in May 2023, the district court noted Schutt was listed as the landlord on the lease agreement but indiscriminately intermingled his assets with his company, Renew, LLC, and the Schutt Family Trust. The district court found no delineation or distinction between Schutt; Renew, LLC; or the Schutt Family Trust and treated the three as one entity.

Schutt produced only the original rental agreement to the district court reflecting monthly rent of $1,900 per month. The district court found Foster owed Schutt $5,700 for July, August, and September 2020 rent ($1,900 x 3 months). The district court also awarded Schutt late fees at a rate of $20 per day from July 2020 until the journal entry of judgment was filed in May 2023 (1,062 days) for a total of $21,240. The district court concluded Foster owed Schutt a total of $26,940 ($5,700 unpaid rent + $21,240 late fees). The amount Foster owes Schutt for past due rent in the amount of $5,700 for July, August, and September is not an issue on appeal.

The district court granted Foster relief on her quantum meruit counterclaim in the amount of $17,868.93 for her construction services, along with prejudgment interest in the amount of $4,866.05 and $450 on her invasion of privacy claim, but declined to award punitive damages. Those amounts are not an issue on appeal as Schutt did not file a cross-appeal. Thus, the single issue we are tasked with resolving is the amount of late fees Foster owes to Schutt.

3

Foster argues the district court erred in (1) awarding Schutt unrequested damages as eviction petitions must include a request for a specific amount of damages owed to the landlord; (2) awarding lump-sum contract damages designed to penalize Foster for breach of contract; and (3) awarding Schutt late fees after Foster paid her outstanding obligations to Schutt through her offsetting judgment. Foster asks us to reverse and remand to the district court with instructions to strike the late fees assessed as an unenforceable penalty.

Schutt suggests Foster did not preserve the issues in the district court and we should dismiss the appeal. Foster responds, noting the parties could not have argued the issues before the district court as the district court did not enter a pretrial order and sua sponte awarded Schutt $21,240 in late fees. Even so, Foster asserts we can address the issues on appeal under two exceptions to the preservation rule: "'(1) the newly asserted theory involves only a question of law arising on'" undisputed facts and is determinative of the issue on appeal; and "'(2) consideration of the theory is necessary to serve the ends of justice or to prevent [the] denial of fundamental rights.'" *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008). We find Foster has sufficiently demonstrated we can consider the issue on appeal under both exceptions.

*Unrequested damages*

Foster argues that under the Code of Civil Procedure for Limited Actions (CCPLA), K.S.A. 61-3801 et seq., an eviction petition must be more specific than an ordinary petition. Foster contends a landlord seeking to evict and collect rent must either state the specific amount sought or file a separate lawsuit for the money owed. See K.S.A. 61-3804. Foster asserts Schutt's damages should be limited to those requested in his petition. Schutt counters Foster's argument, suggesting he explicitly asked for $7,600

($5,850 in unpaid rent + $1,750 in late fees) "*and* for ongoing rent and fees which may accrue during the pendency of the action." (Emphasis added.)

Schutt incorrectly suggests our standard of review is an abuse of discretion. Statutory interpretation is a question of law subject to unlimited review. *Johnson v. U.S. Food Service*, 312 Kan. 597, 600, 478 P.3d 776 (2021). Interpretation of a lease or written agreement and the propriety of a liquidated damages clause also involve questions of law over which we have unlimited review. *Carrothers Constr. Co. v. City of South Hutchinson*, 288 Kan. 743, 751, 207 P.3d 231 (2009). Our review is unaffected by the district court's interpretation of the lease agreement. See *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016).

Under K.S.A. 2023 Supp. 60-208(a)(1), a petition for relief must contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief." An eviction petition under the CCPLA is treated differently.

> "The petition shall describe the premises for which possession is sought and why the plaintiff is seeking possession. If there is rent due for possession of the premises, the petition may include a request for judgment for that amount or the plaintiff may bring a subsequent lawsuit for that amount." K.S.A. 61-3804.

A similar issue arose in *Royal Gardens Apartments v. Nunez*, No. 119,512, 2019 WL 1303065 (Kan. App. 2019) (unpublished opinion). In *Nunez*, another panel of our court found the landlord could ask for possession of the property and for damages for the unpaid rent. 2019 WL 1303065, at *3.

Foster, on the other hand, relies on *Heckard v. Martin*, 25 Kan. App. 2d 162, 166, 958 P.2d 665 (1998), in which another panel of our court affirmed the district court's denial of late fees to the landlord in a forcible detainer action because the landlord never

5

requested such fees. That is not the case here as Schutt requested late fees in his petition. We find *Heckard* does not apply to the facts of this case.

*Nunez* provides better guidance as it addresses the current statute, K.S.A. 61-3804, which suggests seeking damages for unpaid rent is optional and not required in an eviction petition. *Nunez*, 2019 WL 1303065, at *3. We find Schutt's petition adequately requested damages for rent and late fees.

*Lump-sum contract damages as a penalty*

Foster argues the Residential Landlord and Tenant Act (RLTA), K.S.A. 58-2540 et seq., precludes awarding a landlord late fees that are not based on actual damages from the tenant's breach of contract. In other words, Foster argues the RLTA prevents landlords from recovering lump-sum penalties or liquidated damages from their tenants. Foster also asserts the late charges granted in the amount of $21,240 are unconscionable.

Foster contends both penalties and liquidated damages are impermissible under the RLTA. Foster relies on *Carrothers*, in which our Supreme Court stated: "The distinction between a contractual penalty and a provision for liquidated damages is that a penalty, in effect, is a security for performance, while a provision for liquidated damages requires a sum certain to be paid in lieu of performance." 288 Kan. at 754-55.

The *Carrothers* court also explained that to determine whether a liquidated damages clause is a penalty, the reasonableness of the liquidated damages clause must be determined "as of the time the contract was executed, not with the benefit of hindsight." 288 Kan. at 754. A contractual provision is more likely to be for liquidated damages, and not a penalty, if (1) "'the amount stipulated is conscionable, that it is reasonable in view of the value of the subject matter of the contract and of the probable or presumptive loss in case of breach,'" and (2) "'the nature of the transaction is such that the amount of actual

damages resulting from default would not be easily and readily determinable. [Citations omitted.]'" 288 Kan. at 755. Foster bears the burden of proof as the party alleging the contract provision is an unenforceable penalty. See 288 Kan. at 755.

Under the RLTA, "'[r]ent'" is defined as "all payments to be made to the landlord under the rental agreement, other than the security deposit." K.S.A. 58-2543(j). Here, the rental agreement included a provision for a $20 per day late rental payment fee. Such fee falls under the statutory definition of rent as it is a payment to the landlord, per the rental agreement, and is not a security deposit. The RLTA also provides the district court can refuse to enforce a rental agreement if the agreement was unconscionable when made. The district court can also "limit the application of any unconscionable provision to avoid an unconscionable result." K.S.A. 58-2544(a)(1).

A contract provision is unconscionable when it is "'so outrageous and unfair in its wording or application that it shocks the conscience or offends the sensibilities of the court, or is against public policy.'" *TMG Life Ins. Co. v. Ashner*, 21 Kan. App. 2d 234, 250, 898 P.2d 1145 (1995). Here, we find the late fee is not unconscionable on its face at a rate of $20 per day of unpaid rent when the tenant is still in possession of the property. But the late fee can become unconscionable in its application and must be limited. The district court ordered $21,240 worth of late fees by assessing fees from July 2020 through May 2023, when the journal entry of judgment was filed. These fees extended well beyond the date Foster vacated the premises—on or about October 31, 2020.

At most, the district court should have awarded Schutt late fees for the period Foster resided at the rental property without paying rent until she vacated the property—October 31, 2020. It appears undisputed Foster followed the district court's order to vacate the premises. Thus, at the latest, the late fees beginning in July 2020 should have terminated and stopped accumulating on October 31, 2020. Here the award of $20 per

day for 1,062 days is "'outrageous and unfair'" and, as applied here, "'shocks the conscience.'" *Ashner*, 21 Kan. App. 2d at 250.

Another panel of this court explained: "Based upon the language of K.S.A. 58-2543(j), late charges specifically set forth in the written rental agreement are recoverable in a forcible detainer action unless the court finds the charges are unconscionable." *Heckard*, 25 Kan. App. 2d at 165-66. Because we find the late fees assessed here are unconscionable as applied, we reverse and remand to the district court with directions to vacate that amount of the late fees over $2,460—the amount due for the 123 days from July 1 through October 31, 2020—in accordance with our findings. Because prejudgment interest was not originally awarded, and Schutt has made no argument on appeal that he is entitled to prejudgment interest, it should not be awarded on remand.

*Awarding late fees after outstanding balance was paid*

Foster next argues the district court erred in assessing late fees against her beyond the time she was indebted to Schutt. Foster asserts the judgment in her favor eliminated her debt to Schutt and, if a late fee was appropriate, it should have stopped accumulating when the lease term ended or when the debt was paid off. Because we have determined the late fee in this matter cannot be assessed past the time Foster vacated the premises, we find this argument is moot.

The district court incorrectly awarded late fees beyond the time in which Foster lived at the rental property; the late fees should have stopped accumulating after October 31, 2020, when she vacated the premises. At that point, the landlord-tenant relationship terminated and Schutt had no further expectation of rental payments from Foster. Schutt's damages were no longer uncertain or difficult to ascertain and became defined.

Reversed in part and remanded with directions.